[Civil No. 3277. Filed June 1, 1933.]

[22 Pac. (2d) 672.]

STANLEY FRUIT COMPANY, a Corporation, Appellant, v. S. W. ELLERY, Superintendent of Banks of Arizona, *Ex-officio* Receiver, CITIZENS' STATE BANK, Phoenix, Arizona, an Arizona Corporation, Appellee.

Messrs. Baker & Whitney and Mr. Lawrence L. Howe, for Appellant.

Mr. R. G. Langmade, for Appellee.

FICKETT, Superior Judge.—On the fifth day of June, 1928, the Citizens' State Bank of Phoenix entered into a written contract with the Stanley Fruit Company, a corporation, as lessee, hereinafter referred to as appellant, whereby the bank leased to lessee for a period of four years, 347 acres of farm lands in the valley west of Phoenix, hereinafter referred to as the Springer ranch.

On July 31, 1930, the bank became insolvent and was taken over by the superintendent of banks. Appellant did not pay the installments due under the lease on August 1, 1931, November 1, 1931, and February 1, 1932, and S. W. Ellery, as superintendent of banks and receiver, brought three separate actions for these installments as they came due. Appellant filed identical answers and counterclaims in each case, and they were all consolidated for trial.

Appellant's principal defense, which also formed the basis of its counterclaim, was that it was induced by fraud and misrepresentation on the part of the bank to enter into the lease to its damage in the sum of $30,000. The allegations of misrepresentation, as set forth in plaintiff's pleading, are:

"The bank did represent and state to the said defendant that the said lands and the whole of the same had for a long time prior thereto been planted and cultivated to alfalfa and to no other crops, and that said lands and the whole of the same were very fertile and were absolutely suitable and fit for the growing and raising of vegetables and melons, and would be so suitable and fit for a term and period of more than four (4) years from the first day of August, 1928; and did further represent and state to the said defendant that said lands and the whole of

the same was and were in such an excellent condition and so fitted and suitable to the growing and raising of vegetables and melons and would remain so for the whole period of the proposed lease, that at no time during the term of said lease would any fertilization of the said lands be required, or any rotation of crops.''

All of the negotiations leading up to the execution of the lease were conducted for the bank by L. L. Steward, who for several years had been cashier and generally in charge of its affairs, and for appellant by Dean Stanley, who was president and manager of appellant company. Stanley testified that in conversations prior to the execution of the lease Steward praised the land very highly and stated that the land was very good for vegetable raising; that the Springer ranch had only been farmed to cotton during the boom years of 1919 and 1920; that after 1920 the land had been put back into alfalfa; and that it had been in alfalfa for several years prior to the execution of the lease. Steward, in his testimony, denied that he made any specific representation that the land had been in alfalfa since 1920, but admitted that he told Stanley that he considered this Springer ranch to be one of the best in the Salt River Valley, and that the bank had just succeeded in getting the land back into alfalfa, which it had been gradually doing since 1920. In addition, although denied by Stanley, Steward testified:

"I remember Stanley asking me what I thought of that land, and I said, 'Dean, if I were wanting to know about lettuce land I would ask you, and you should know that land.' ''

The undisputed evidence showed that the bank for several years prior to 1926 had only held a mortgage on the ranch in the amount of about $100,000; that the bank had only taken a deed to the land two years before the lease was signed; that one Mr. Springer

had lived on this particular ranch periodically since 1907, and continuously since 1921; that Stanley himself had been engaged in the raising and harvesting of vegetables in the Salt River Valley continuously since 1920 on a large scale; that one McElroy, who was field supervisor of appellant, and in such capacity supervised all the farming and harvesting operations of, and the leasing of lands by, appellant, had on two or three occasions taken some vegetable growers out to the Springer ranch and looked it over and inspected it, and had had several conversations with Stanley about the Springer ranch before any negotiations were begun with the bank; that at the request of Stanley himself, McElroy, during the month of May prior to the signing of the lease, had inspected the ranch, looked it over, walked over it, and made a report of his inspection to Stanley; and that, before the negotiations were begun with the bank, McElroy had told Stanley that it was generally reported around the country that the Springer ranch had been in alfalfa for several years, and that he believed it was as good as the Ross ranch, which was adjacent to the Springer ranch. The Ross ranch was then under lease for vegetable growing by appellant.

The assignments of error raise only the question of whether or not the trial court correctly instructed the jury on this fact situation. The jury was instructed as to the general essentials of an action based on fraud and misrepresentation, in accordance with our decision in *Moore* v. *Meyers,* 31 Ariz. 347, 253 Pac. 626. Appellant assigns this as error, especially in that the court included the usual element that there must be present the intent that the representation should be acted upon by the person in the manner reasonably contemplated and the right of the

hearer to rely thereon. This instruction was fully justified by the pleadings and evidence.

Appellant also assigns as error the giving by the court of the general instruction that every false affirmation does not amount to a fraud, and that a party is not entitled to a verdict if by an ordinary degree of caution the party complaining could have ascertained the falsity of the representations complained of. On the facts adduced, this instruction was fully justified under the principles enunciated by this court in *Sorrells* v. *Clifford,* 23 Ariz. 448, 204 Pac. 1013.

Appellant next assigns as error the giving of general instructions usually given by trial courts in this type of cases to the effect that dealer's talk and puffing statements do not amount to actionable fraud where parties deal at arms' length, have equal means of information, and are equally qualified to judge the property, and also that when a party capable of taking care of his own interests makes a bad bargain the law will not assist him. Both of these instructions were proper, for not only did the evidence reveal the making of many puffing statements, but appellant's pleadings also allege the making of same in the paragraph heretofore quoted from.

Appellant assigns as error the refusal of the trial court to give certain instructions requested by it, the general purport of all of which was that if the owner of land intentionally deceives another as to a past existing fact, for the purpose of inducing such other to enter into a lease, and such other relies upon the statements of such owner and is prejudiced and damaged thereby, he is entitled to rely upon such statements and representations without making any independent investigation.

The trial judge refused the instructions as requested, but did give in his own language their sub-

stance. So long as the trial court correctly covered the issues presented by the requested instructions, it is not error to refuse to give the instructions in the exact language requested by a party, even though such instructions correctly state the law. Considering the instructions as a whole, as applied to the evidence in the case, we find that the trial judge did not commit any error and that he correctly stated the law applicable to the case in a very adequate manner.

The judgment of the superior court of Maricopa county is therefore affirmed.

ROSS, C. J., and McALISTER, J., concur.

NOTE.—Judge LOCKWOOD being ill, the Honorable FRED W. FICKETT, Judge of the Superior Court of Pima County, was called to sit in his stead.