[Civ. No. 7923. Third Dist. Sept. 11, 1951.]

BENJAMIN C. FEDLER, Respondent, v. LLOYD
HYGELUND et al., Appellants.

Russell A. Harris for Appellants.

Matthew E. Marsh and Coyle E. Bybee for Respondent.

VAN DYKE, J.—Respondent Fedler brought this action to recover damages for personal injuries sustained while riding in a truck driven by appellant Rippin. The truck was owned by appellant Hygelund. The complaint alleged that respondent was a passenger and that the accident and resulting injuries to him were caused by the negligence of Rippin in operating the truck. Appellants denied that respondent was a passenger and alleged that he was a guest. Negligence was denied and it was alleged that the accident was unavoidable. A jury returned a verdict in the sum of $30,000 for respondent against both appellants and judgment was entered in that amount.

Appellants first contend that the evidence is insufficient to support the implied finding of the jury that the respondent was a passenger and not a guest within the meaning of section 403 of the California Vehicle Code. It appears from the record that appellant Hygelund owned and operated the Butte Tallow Company located in Chico, California; that Rippin was his employee and at the time of the accident was driving the truck within the scope of that employment; that respondent had been an employee of Hygelund, but at the time of the accident was under a total disability rating by reason of undulant fever contracted some time previously; that while respondent had been so employed he held the position of head butcher and foreman of the Chico plant.

Appellant Rippin made regular trips to various localities in Hygelund's truck to collect animal refuse for use in the tallow business. He testified that about two weeks before the accident plaintiff had expressed the desire to accompany him on one of his trips to Susanville, but that approximately a week later, when he asked respondent if he then wanted to go on a trip about to be made, respondent said that he did not then feel well enough. About a week later Rippin again asked respondent if he wanted to go to Susanville the following day. Respondent's version of that conversation was as follows: Rippin said to respondent, "How about going

along to Susanville with me tomorrow? It is a long, tiresome trip. We will probably run into a little snow and the road will be icy and we will have to put on chains. . . . Probably it will take us fifteen to sixteen hours.'' Respondent replied that he would go on the trip. The two men departed in the truck the following morning at 4 a. m. from Chico. When they arrived at Lassen Lodge respondent assisted Rippin in putting chains on the truck and later, when they were no longer needed, assisted him in removing them. At Susanville the truck was loaded with offal, respondent assisting in the loading by holding the barrels over the edge of the truck while Rippin emptied the contents into the truck. Respondent also tallied the weights as Rippin loaded the truck. The loading completed, the two men left on the return journey and the accident occurred at a place called Payne's Creek. Before going on this particular trip respondent had taken similar trips to other localities with other employees of appellant Hygelund. These trips were during the period that respondent was disabled from his fever. Concerning these he testified that he did not ''invite himself'' on these trips; that he did some work on these trips such as helping out with the loading; that on one occasion he went to Susanville with the company's superintendent and on this trip he poured concrete, and cut a door in a wall; that there had been no agreement he was to receive pay for this work, yet he was paid some four days thereafter, and the company also paid the cost of his meals and hotel bill during the trip. There was conflict in the evidence concerning the arrangements that were made for the trip on which he received his injuries. For instance, appellant Rippin testified along the general line that he invited respondent to go on the trip merely as a matter of mutual social enjoyment; that he did not stipulate for or expect any help in the doing of his work, because that was his job and he was capable of doing it; that the two men were close neighbors. and well acquainted; that there was no occasion for him to solicit aid. Under the familiar rule, we must consider the evidence in the light most favorable to respondent.

Section 403 of the Vehicle Code defines a guest as one who accepts a ride without giving compensation for such ride. The proper construction of this language has frequently received the attention of our appellate courts, and in *McCann* v. *Hoffman,* 9 Cal.2d 279 [70 P.2d 909], the court reviews numerous cases on the subject and declares at page 283:

". . . the nature of the compensation as contemplated by such a statute is as variable as the particular facts involved;" that "many benefits or considerations other than cash or its equivalent have been held to be payment or compensation within the meaning of the language adopted by the legislature"; and that compensation could exist "when the plaintiff accepted the ride at the behest of the driver to assist the latter in arriving at his destination or fulfilling the object of the journey." We think the contention here advanced must be resolved by considering whether from this record the jury could reasonably infer that the respondent did accept the ride at the behest of Rippin to assist him in fulfilling the objects of the journey he was about to make.

The discussions that occur when the owner or driver of an automobile takes another into the car for a ride are apt in most cases to be sketchy and fragmentary since neither anticipates an accident, nor does either have the guest statute in mind. They are seldom conscious of making anything in the nature of a bargain. Such was the case here. From what occurred the jury could reasonably have concluded that Rippin requested respondent to accompany him; that when he did so he pointed out the difficulties that would probably be incurred and that the trip would be long and tiresome, consuming some 15 to 16 hours; that chains would have to be used. The jury were further entitled to consider the past relations of respondent and the appellants and the fact that he had been useful in small ways on other trips he had taken. We think the jury were sufficiently supported by the record in their conclusion that there was a common understanding between the two men that the suggested aid would be forthcoming and that it constituted compensation for the ride. (*Christiana* v. *Rattaro*, 81 Cal.App.2d 597 [184 P.2d 682]; *Yates* v. *J. H. Krumlinde & Co.*, 22 Cal.App.2d 387 [71 P.2d 298].)

It is next contended that the evidence is insufficient to support the implied finding of the jury that appellant Rippin was negligent in the operation of the truck. The testimony relative to this contention shows the following: The truck was a 2-ton Chevrolet equipped with a steel box body approximately 4 feet high and 12 feet long. At Susanville it was loaded with about 5 tons of animal refuse. The two men stopped at Inskip Inn for coffee, at which time Rippin observed that he had a "short pedal," that is, the brake pedal was 2 inches from the floor board. He testified that with

a short pedal the driver "pumps" the brake pedal to get more pressure. The brakes were hydraulic. After leaving the inn, Rippin shifted from the first to the fourth or highest gear. As the truck reached the crest of Inskip grade its speed was 30 to 35 miles per hour. After starting down the grade Rippin shifted back to third gear, but the truck continued to gain speed. He then endeavored to apply the brakes and discovered that they did not take effect. He then attempted to change to a lower rear axle gear by means of a switch located on the dashboard. Still gaining speed, he attempted to shift to second gear and at that point discovered that the clutch was out. The truck proceeded down the grade out of control until it turned over, injuring respondent. Rippin said he did not know what caused the brakes to go out, but as to the clutch he said, "I could have jerked it when I flipped it into the two-speed and tore that out." There was evidence that the mechanical condition of the truck had been checked some three weeks before the accident and that the brakes were at that time in satisfactory shape. After the accident it was found that the brake cylinder on the right rear wheel had exploded, due in the opinion of one witness to overheating, also that the brakes showed signs of excessive wear, the brake bands having only 40 per cent efficiency remaining. On that type of truck the bursting of the brake cylinder eliminates brake efficency except as to the mechanically-controlled emergency brake. Rippin testified that he had used the brakes considerably going downgrade with the heavy load and that could have had something to do with his losing the brakes; that the brakes could have burned out. While Rippin also testified that he had observed nothing wrong with the equipment until the failure of the brakes and the going out of the clutch after he had already embarked upon the downgrade, the jury were not obliged to believe that such was the case and could infer from the observation of the short pedal and the necessity of pumping to get brake pressure and from Rippin's testimony that he could have burned the brakes out, that he did in fact have warning that his equipment was in a dangerous condition when he started down Inskip grade. We think from the facts related that the question of Rippin's negligence was for the jury to determine and that their determination is supported by substantial evidence and by the reasonable inferences which they could have drawn therefrom. ■ Indeed, the jury could have considered that because the truck had been for

some time and was at the time the accident happened under the exclusive control of Rippin and because ordinarily trucks do not run away downgrade unless the one having the control of the truck has been negligent, Rippin had in some way failed to exercise due care. Such facts constitute circumstantial evidence from which an inference of want of care may be drawn. In short, the doctrine of res ipsa loquitur was applicable to the situation portrayed by pleadings and the evidenec here. ██ Plaintiff had pleaded negligence in general terms and, while he had offered evidence suggesting definite negligent acts and omissions he had not thereby waived his right to rely upon the evidentiary value of the circumstantial evidence just referred to. Much less had such circumstantial evidence been eliminated from the record by the introduction into evidence of testimony as to the acts and conduct of Rippin and as to the condition of his equipment. As said in *Leet* v. *Union Pac. R. R. Co.*, 25 Cal.2d 605, 621 [155 P.2d 42, 158 A.L.R. 1008]:

''If, because of the circumstances of the case and the probabilities, an inference of negligence is raised, the doctrine should be applied, it is difficult to see why its application should be denied merely because plaintiff proves specific acts of negligence. There is no reason why such proof should wholly dispel the inference any more than it would in any other case. The plaintiff is penalized for going forward and making as specific a case of negligence as possible. If he endeavors to make such a case he runs the risk of losing the benefits of the doctrine to which the circumstances entitle him. Rather than place him in such a position he should be encouraged to prove as much as possible. The end result is not injurious to the defendant. He is not injured by the fact that the inference of negligence arose. The circumstances established a foundation, therefore, based upon probability. Indeed, he is in a better position as he has specific evidence to meet before the trier of fact that may be helpful to him. The case goes to the trier of fact with the general inference of negligence, plus other evidence of specific acts of negligence, to be weighed against defendant's showing. There is no reason for applying a different test for determining when the inference is wholly dispelled as a matter of law in a case where res ipsa loquitur is applicable, than is used in the case of any other inference. The instances in which an inference is dispelled are rare . . . . Whatever the test may be, there is no occasion for a different one when considering

the inference arising from the application of the doctrine of res ipsa loquitur. Hence, we conclude that evidence of specific acts of negligence does not deprive plaintiff of the benefit of the doctrine, unless the case is one where the inference would be dispelled as a matter of law under the same rules that apply in cases generally.''

Certainly it cannot be said from the record here that the introduction of evidence as to specific negligent acts or omissions so dispelled the inference as in effect to eliminate it from the case. It is true that respondent did not ask the trial court to instruct the jury upon the doctrine of res ipsa loquitur, but that does not mean that when we search the record to determine whether or not it supports the verdict we can ignore the presence of the inference simply because the jury were not instructed upon the matter. The doctrine is grounded upon common observation and common sense, and, whether instructed or not upon the matter, the jury is competent to draw the inference if it desires to do so. We cannot say that the jury in this case did not use their common knowledge and common sense and conclude that by reason of the circumstances Rippin was negligent in some way unexplained by the testimony proceeding from either side. If they did so they would be applying the doctrine exactly as they might have applied it had the respondent stopped short by proving the circumstances justifying the inference of negligence. Had he done so and had the jury with or without instruction defining the doctrine of res ipsa loquitur determined this case by drawing the inference of negligence it could not be said that the record did not support the jury's verdict.

 Appellants next contend that the trial court committed reversible error in admitting testimony of the witness Jones as to the way he would operate such a truck so loaded on that particular grade. By occupation, Jones was a truck driver and was familiar with the truck involved in the accident which injured respondent. He had driven it on the company's business and he had driven it loaded down the Inskip grade. He knew the road and he described the grade as winding and fairly steep. He said that the truck had four speeds forward ''conventional'' and had a lower axle which gave four more speeds, totaling eight speeds forward and two backward. Over objection as to materiality and competency he testified as follows: ''Well, when I approach this hill I slow down to a speed where I shift into lower gears and shift

it into second gear and use my brake and compression both to go down this hill, it is impossible to go down using compression and brakes alone. . . . At the top of the hill I slow down where I can shift into a lower gear." When he testified that in order to take that truck with its load down the Inskip grade it was necessary to use both motor compression and brakes and that neither alone would suffice, he was testifying as to facts within his own knowledge and experience and such testimony was admissible as it had to do with the conditions under which the truck was being operated by Rippin at the time of the accident. Bearing in mind that Rippin, after starting down the grade, attempted to work back through the gears to get compression and so endeavoring threw the gear switch as part of the process of gear reduction, thus, as he said, perhaps disabling the clutch, it became proper to introduce evidence tending to show that in the proper operation of the truck the gear reduction should have been accomplished at the beginning of the grade or just before entering it. This was a matter which well might be beyond the common experience of the jury, bearing in mind the complicated gear structure and the driving tactics required of one driving a heavily-loaded vehicle down a steep and winding grade. Such an operation may well be different from the driving of a passenger car down the same grade. The proper method of doing this was therefore a proper subject of expert testimony and the witness had qualified in that respect. Had he therefore been asked as such expert to describe the proper manner of launching that vehicle upon that grade no objection would have been valid. But he was first asked what his "own procedure" was on entering that grade with a loaded truck and there was some discussion between court and counsel as to the admissibility of the answer to that question. He was then asked if he would describe "the proper method of proceeding down over that hill at that particular point in that truck," and he stated that he would describe it the way he did it. Objection was again interposed because the question was not limited to the mechanical operation of the truck and the witness might be a different type of driver from Rippin and still both be safe drivers. Counsel for the appellants added that he had no objection to the witness' testifying that he would do certain things on going down a grade, but as to what he would do under the same circumstances confronting Rippin was inadmissible in evidence. The court overruled the objection and the witness stated, "Well, I will

describe it the way I did it, whether it is proper or not" and counsel for the respondent stated that was what he wanted and "not to say the proper way." The evidence above narrated was then given. We think the fair import of the witness' testimony was that he was describing the way the vehicle ought to be operated by describing the way he would do it, based upon his experience as a truck driver and as having driven that truck under similar conditions to those under which Rippin was operating it. So considered, we think the introduction of the testimony was not erroneous and certainly would not justify the reversal of the judgment.

■ Appellants requested the court to give the following instruction: "If you believe from the evidence that the plaintiff Benjamin C. Fedler rode on the automobile truck of the defendants solely for his own pleasure and benefit, and any help or assistance that he may have given to the defendants, or either of them, during such ride, was volunteered by the plaintiff, then you are instructed that the plaintiff herein was a guest at the time and place of this accident and was not a passenger." This instruction is practically verbatim the same as that refused in the case of *Yates* v. *J. H. Krumlinde & Co., supra.* The instruction there received the approval of the appellate court and its refusal was held to be error. As far as it went we think the instruction stated the law. It was apparently aimed at a possible contention or argument that even though the respondent embarked upon the journey *solely* for his own pleasure and *solely* for his own benefit, and therefore as a guest, he might change his status by voluntarily rendering service en route. As the court in *Yates* v. *J. H. Krumlinde & Co., supra,* said at page 390, citing *McCann* v. *Hoffman, supra,* and *Walker* v. *Adamson,* 9 Cal.2d 287 [70 P.2d 914]: ". . . we must now take it to be settled that if a person accepts a ride from another for his own pleasure he does not become a passenger for compensation merely because he may perform some incidental voluntary service en route." The instruction as requested could properly have been given. However, the court modified or amended the same by inserting therein the following language, "and that no assistance was contemplated or expected," so that the instruction then told the jury that if the respondent rode on the truck solely for his own pleasure and benefit and if any help he might have given during the ride was volunteered by him and if *no assistance was contemplated or expected,* then he was a guest at the time of the accident. It is argued

that the italicized portion of the instruction permitted the jury to infer that appellants' expectation of some help from respondent would be sufficient to make him a passenger. But when the instruction is read with others defining the terms ''guest'' and ''passenger'' the criticism is unwarranted. The jury were told that a guest was one who was invited, expressly or impliedly, to enjoy the hospitality of a driver of a vehicle; who accepted such hospitality; who rode either for his own pleasure or on his own business, without making any return to or conferring any benefit upon the driver or his principal as compensation for the ride other than the mere pleasure of the rider's company. Further, the jury were told that where the driver or his principal received compensation which was the chief inducement for the rider's transportation and which was given and received as compensation and as a business transaction then such rider was a passenger. If the reference in the criticized instruction to contemplation or expectation of assistance be read in the light of the foregoing, then we think the jury could not have been led into thinking that mere expectation on the part of appellants that respondent would render some assistance would, standing alone, make him a passenger.

The judgment is affirmed.

Peek, J., and Schottky, J. pro tem., concurred.