293 P.2d 430

ALLIED VAN LINES, Inc., a corporation, Dallas Transfer & Terminal Warehouse Co., a corporation, and Alvin Mack Moore, Appellants,

v.

Randolph L. PARSONS, Appellee.

No. 5968.

Supreme Court of Arizona.

Feb. 7, 1956.

Rehearing Denied Feb. 28, 1956.

Darnell, Robertson, Holesapple & Spaid, and Richard R. Fish, Tucson, for appellant.

Norman Herring, Tucson, for appellee.

LA PRADE, Chief Justice.

This is an appeal from a judgment for damages in a personal injury action and an order denying defendants' motion for a new trial. Plaintiff, a driver of a Greyhound bus, was injured when a tractor-trailer combination, driven by defendant Moore, employee of defendant Dallas Transfer and Terminal Warehouse Co., crossed the center line of State Highway 86 and collided with plaintiff's oncoming bus. Prior to the accident it had been raining and the highway at the point of collision was wet and slick. According to several disinterested witnesses the truck was attempting to pass an automobile in front of it when the bus came around a curve in the road. When the two drivers first sighted each other the truck was in the center of the highway, across the double-striped center line, about six hundred feet from the bus.

Apparently, at the sight of the bus the truck driver Moore attempted to get back into his own lane and "hit" the foot brakes twice "easy". This caused the truck-trailer combination to hit the car in his own lane and immediately thereafter the trailer began to weave back and forth until finally the entire combination crossed the roadway into the lane in front of plaintiff, where the collision resulted. Pertinent facts concerning the injuries sustained by plaintiff will be discussed subsequently in connection with the appropriate assignments of error.

The case was submitted to a jury which found in favor of plaintiff on the issues of negligence and contributory negligence, and awarded damages in the sum of $81,266.

Defendants moved for a new trial on the grounds that (1) there had been irregularities in the proceedings by the trial court; (2) excessive damages had been awarded by the jury; (3) errors of law had been committed by the trial judge in admitting and rejecting evidence, charging the jury and refusing certain instructions

requested by defendants; and (4) the verdict, decision and judgment were not justified by the evidence and were contrary to law. This motion was denied in its entirety. This appeal contains essentially twelve assignments of error, all of which were the bases for the motion for new trial.

Defendants' first two assignments of error deal with the admission of opinion evidence by four expert witnesses for the plaintiff. Three of these witnesses had been bus drivers for more than eleven years each, and were called for the purpose of showing that plaintiff had not been contributorily negligent in the operation of his bus once he sighted Moore's truck. Each witness testified as to the proper method of slowing a bus like plaintiff's, when crowded with passengers and when the highway was not only curved but wet and slick. There was evidence to show that drivers of such buses undergo specialized training in their operation. Defendants argue that expert opinion is not permitted in this type of situation since the operation of a Greyhound bus and an ordinary automobile with which jurors are presumed to be familiar is not basically different. This contention must fail since we believe that the correct method of operating a large passenger bus equipped with air brakes, suspended on air bellows instead of springs, and which requires special training, is properly the subject of expert testimony. See Fedler v. Hygelund, 1951,

106 Cal.App.2d 480, 235 P.2d 247, 252, where the court held expert opinion proper in connection with the operation of a heavily loaded truck down a grade. This clearly is a situation where the testimony offered was outside the general or ordinary experience of the average layman. Wigmore on Evidence, Vol. II, Section 559.

Defendants' other point that the witnesses' answers constituted an invasion of the province of the jury is also without merit since each of the above three witnesses confined his answer to the proper method of slowing or stopping a bus in a situation such as plaintiff had found himself when he first saw defendant Moore's tractor-trailer combination crossing the center line of the highway. Though this evidence might have had some influence on the jury in determining whether the plaintiff was contributorily negligent in his operation of the bus, this court has held previously that expert opinion will not be excluded merely because it deals with ultimate facts. Watson v. Southern Pac. Co., 1944, 62 Ariz. 29, 34, 152 P.2d 665.

The fourth witness mentioned above, William Holloway, testified as to the proper method of applying brakes to a truck-trailer combination. Prior to this testimony Holloway had stated that he drove a truck for a living and had been engaged in driving commercial vehicles

for approximately twelve years at the time of the trial. No other testimony as to Holloway's qualifications was offered. Defendants argue that there was not sufficient foundation for this testimony; that it was not a proper subject of opinion evidence; and that it invaded the province of the jury. As to the last two contentions they have been answered by the preceding paragraphs of this opinion. As to the question of whether a proper foundation was laid for the admission of such evidence it suffices to say it is well-settled law in this jurisdiction that the question of whether an expert witness is competent is a matter that rests in the sound judicial discretion of the trial court. Gila Valley, G. & N. R. Co. v. Lyon, 1905, 9 Ariz. 218, 80 P. 337; Arizona Superior Mining Co. v. Anderson, 1927, 33 Ariz. 64, 262 P. 489; Wigmore on Evidence, Vol. II, Section 561. We do not find such discretion abused here. Parenthetically, it might be added that defendant Moore agreed with Holloway's statement as to the generally accepted method of slowing or stopping the type of combination he was driving that day, and admitted that he had failed to use such method, i. e., to first apply the hand lever which actuates only the trailer brake. This procedure brakes the rear vehicle—pulling it backwards.

Defendants' third assignment of error concerns a portion of plaintiff's instruction No. 8, in which Section 66–163f, 1952 Cum. Supp., A.C.A.1939, was read verbatim to the jury. Section 66–163f reads as follows:

"No-passing zones.—The commission is hereby authorized to determine those portions of any highway where overtaking and passing or driving to the left of the roadway would be especially hazardous and may by appropriate signs or markings on the roadway indicate the beginning and end of such zones and when such signs or markings are in place and clearly visible to an ordinarily observant person every driver of a vehicle shall obey the directions thereof."

It is defendants' contention that reading this section of the code amounted to a comment on the evidence, which is forbidden by our Constitution, and that such comment might have led the jury to infer that defendant Moore was in fact driving on the wrong side of the highway at the time of the collision, and that the highway was especially hazardous at that spot. The last part of the instruction was to the effect that if the jury should find that defendant Moore had violated the section in question such violation constituted negligence as a matter of law. This part was not objected to.

Both of the above contentions are without merit. Obviously, the portion of the instruction objected to could not have led the jury to infer that defendant Moore was driving on the wrong side of the road. Like any other proper instruction it merely

set forth the law applicable to the fact situation as developed by plaintiff's case.

The second point, that the jury could infer that the highway was "especially hazardous" in the immediate area of the accident, is not persuasive. First, there was only one question for the jury to decide in connection with this part of the instruction, and that was "Did Moore attempt to pass the car ahead of him in an area where he knew passing was forbidden by law?" Defendant Moore admitted that he had observed the double line and knew that to drive a vehicle to the left of same or to overtake and pass in such area was a violation of law. By such admission the fact that the State Highway Commission had made a determination that this particular area of the highway system was "especially hazardous" had been withdrawn from the issues of the case. Defendants argue that the words "especially hazardous" served to raise the standard of care prescribed for defendant Moore, but this is not so since a moment's reflection will show that there was no question of standard of care for the jury as regards this phase of the case. If the above question were answered in the affirmative the jury *had* to find Moore negligent; the reasonably prudent man test was not applicable here due to the well-settled rule making such a violation negligence per se. Second, we do not agree that this constituted a comment by the trial judge. He merely quoted verbatim a statute giving the State Highway Commission power to determine certain areas of highways "especially hazardous" for overtaking and passing. It is well-settled administrative law that when an administrative agency has acted pursuant to lawfully delegated authority the results of such action are not subject to collateral attack. 42 Am.Jur., Public Administrative Law, Sec. 159; 73 C.J.S., Public Administrative Bodies and Procedure, § 112. Here the instant determination of the State Highway Commission was conclusive on all parties to the action. Reading the section in question did not constitute a comment on the evidence.

Defendants' fourth assignment of error refers to its requested instruction No. 3 and the trial court's remarks in explanation thereof. In view of defendants' failure to make timely objection to these interpolated remarks, this court cannot consider any assignment of error based thereon. It is too late for a party to raise an objection in connection with instructions to the jury for the first time on appeal.

Defendants' contention that their instruction was misread must also fail since a reading of said instruction and the one given by the trial court show that the two instructions are almost identical. The very minor changes in wording are immaterial. Glenn v. Chenowth, 1951, 71 Ariz. 271, 226 P.2d 165, cited by defendants is inapplicable here. In that case, after sus-

taining an objection to an instruction in chambers, the trial judge gave the instruction to the jury. We held that counsel's objection in chambers did not have to be repeated later. In the case at bar the court gave substantially the same instruction as defendants had requested, but, and here is the crux of the matter, when delivering such instruction to the jury the court interpolated some remarks in explanation thereof. Defendants did not object to either the wording of the instruction as given or to the remarks. We do not believe the opinion in the Chenowth case may be so unreasonably extended as to include remarks of the trial court in explanation of his instructions. Counsel must object to such remarks if they believe them improper or misleading at the time spoken or at least before the case is submitted to the jury. In this case defendants failed to so object and thus waived their right to attack said remarks on appeal.

▆▆▆▆ The next assignment of error relates to the refusal of the trial court to instruct the jury as to unavoidable accident, defendants' requested instruction No. 2. It is unnecessary for us to determine whether the evidence would support such an instruction inasmuch as the lower court granted defendants' instruction No. 8, which follows:

"Ladies and gentlemen of the jury, you are instructed that if you find from the evidence that at the time of the collision and immediately prior thereto, the defendants' tractor and trailer was across the double line so as to be on the north or westbound side of the highway, you are not to resolve the question of negligence against the defendants because of that alone, for if you also find that the defendants' tractor and trailer was caused to cross the line by reason of conditions over which defendants had no control, or for which defendants were not responsible, then you will find that there was no negligence on the part of the defendants in this connection."

It is clear that the above charge is substantially similar to the instruction which was refused. This court has repeatedly held that where the instructions as a whole cover the issues of the case directly or indirectly it is not reversible error for the trial court to refuse a particular instruction. Stanley Fruit Co. v. Ellery, 1933, 42 Ariz. 74, 22 P.2d 672; Webb v. Hardin, 1939, 53 Ariz. 310, 89 P.2d 30; Southwestern Freight Lines v. Floyd, 1941, 58 Ariz. 249, 119 P.2d 120.

▆▆▆▆ In assignments of error 6, 7 and 8, defendants argue that the trial court erred in refusing to give three instructions (6, 7 and 19) dealing with damages. We believe that instructions 6 and 7 were merely cautionary since they would have warned the jury against speculating as to the cause and amount of damages, respectively. This jurisdiction follows the general rule as to

cautionary instructions, i. e., they are within the discretion of the trial court and will not be disturbed on appeal unless there has been an abuse of discretion. Tenney v. Enkeball, 1945, 62 Ariz. 416, 428, 158 P. 2d 519.

In view of the clear and unambiguous instructions given to the jury on the law of causation and damages in this case we cannot find any abuse of discretion in the trial court's refusal of instructions 6 and 7.

Defendants' instruction No. 19 would have instructed the jury to consider what effect, if any, plaintiff's pre-existing condition, namely Buerger's disease, would have had upon plaintiff's future earning capacity had there been no accident. The trial court properly refused this requested instruction for it would have injected the sheerest speculation into the jury's deliberations. The testimony of the various physicians and surgeons regarding Buerger's disease in general, and the plaintiff's case in particular, indicated there was no way of knowing when and in what degree this illness would affect plaintiff in the future; too many factors are involved in this disease and every case differs from the next; in some cases the disease progresses rapidly, while in others it is self-limiting with apparent remission. At the time of the accident plaintiff had been afflicted with the disease for some time and yet he had continued to work a full schedule. Since none of the expert witnesses could state what the future would have held for Parsons so far as the effect on him of his ailment, it would have been impossible for a jury of ordinary laymen to attempt to predict what the future course of the disease and its effects would have been. We believe the jury was properly instructed when the court stated:

"Now, the injured person is entitled to recover full compensation for all damage proximately resulting from the others' negligent act even though his injuries may have been aggravated by reason of a pre-existing physical condition that rendered him more difficult to cure by reason of his state of health."

Assignments of error 9 and 10, respectively, refer to three alleged acts of misconduct on the part of the trial judge, and his calling of a recess just before 5:00 p. m. during the closing arguments. The alleged acts of misconduct are as follows: (1) the court addressed an eleven-year-old boy witness as "mister"; (2) in answer to a statement of defense counsel that he would add up plaintiff's payroll slips to "save the jury from some figuring", the judge said, "I think they will enjoy it," and (3) the court told defense counsel to "wave your hands, or stand up" to prevent the plaintiff from answering until the court ruled on his objections. For two reasons we must deny defendants' contentions.

First, defendants failed to object to such remarks at any time during the trial, thereby waiving their rights to appeal on such grounds, and second, we do not feel that any one of these remarks was or could have been prejudicial to defendants. Defendants do not dispute the first of the above rulings, but in anticipation thereof argue that they did raise the point, not in their written motion requesting a new trial but at the time of *oral argument* on said motion. Belated objections which might have been met if timely made during the trial may not be raised for the first time in a motion for new trial, and a fortiori not during the oral argument of such a motion. We believe the above objections fall in such a class.

As to the court's calling a recess at 5:00 p. m. immediately following the completion of the defendants' argument to the jury, thereby allowing the plaintiff alone to be heard on the following morning just before the case went to the jury, we hold that this is a matter within the sound discretion of the trial judge. Under the circumstances of this case, i. e., one woman juror was pregnant and another had displayed signs of weariness, we do not find an abuse of discretion.

The substance of defendants' assignments of error Nos. 11 and 12 is that the trial court erred in refusing to grant defendants a new trial on the ground that the award of $81,266 to the plaintiff was excessive as a matter of law and appeared to be the result of passion and prejudice. At the outset defendants are met with the well-settled principle that in the first instance, at least, it is for the trial court to determine whether a verdict is excessive, and its action in granting or refusing to grant a new trial on that ground will not be disturbed on appeal unless an abuse of discretion is shown.

Defendants argue in their brief that passion and prejudice on the part of a jury may be presumed when a verdict is so excessive "as to shock the conscience of the appellate court", citing Standard Oil Co. of California v. Shields, 1941, 58 Ariz. 239, 246, 119 P.2d 116, 119. Recently, in Stallcup v. Rathbun, 1953, 76 Ariz. 63, 66, 258 P.2d 821, 844, the entire question of excessive damages, as well as passion and prejudice on the part of the jury, was discussed at length, and, reaffirming the above statement from the Standard Oil case, we declared that for an appellate court to "predicate a finding of passion and prejudice" upon an award of damages, the verdict would have to be more than just excessive, it would have to be "flagrantly outrageous". This leads us to an examination of the facts to determine whether the verdict is such as to shock the conscience of this court.

Plaintiff was forty-five years of age at the time of the accident, with a life expectancy of 24.54 years. He had been working for his then employer for sixteen

years. His earnings at the time of the mishap averaged $530.41 per month. Sixty-five was the retirement age set by his employer. Driving trucks and buses was the only vocation that he knew or was trained to do. It had been his livelihood for twenty-five years, his whole adult life. Plaintiff never progressed beyond the eighth grade insofar as his formal education is concerned. Medical experts say he will never again drive a bus or truck.

The plaintiff as a result of the accident has a 100% functional disability of his right leg. Defendants argued that the amount of this award is excessive for just one leg. However, due to this man's pre-existing condition, the Buerger's disease, the situation is more grave. Had the man's circulatory or vascular system been unimpaired surgical repair of the leg or amputation and prosthesis could have been undertaken as was testified by expert witnesses for both sides. But in this case, because of the Buerger's disease, expert witnesses for the plaintiff, one of whom was his attending surgeon, Dr. Hastings, strongly advised against touching the limb in any manner unless an emergency situation arose where amputation was necessary to save plaintiff's life. Plaintiff's doctors felt that the Buerger's disease might be reactivated by surgical intervention in seeking a cure. All the doctors agreed that any slight trauma or injury to the afflicted limb could possibly reactivate the disease, causing a serious condition. The experts for the plaintiff did not feel that the risk was worth taking.

Thus from the testimony it appears that Parsons will never have a good leg again, and since his Buerger's disease precludes surgical intervention, this becomes more than just the loss of a limb. We believe that the disability of the leg goes to his whole physical makeup. Medical testimony further revealed that plaintiff would never be able to sustain much weight on this crippled leg. In addition, there was evidence to show that he could not take a job which would expose him to extremes of heat or cold, and that he could not work at any job requiring him to stand on his feet, to lift weights, or run any risk of even slight traumatic injury to said leg.

All of the above goes to plaintiff's future ability to earn a living. At the time of the trial plaintiff had lost approximately $4,500 in wages and had incurred reasonable medical expenses in the neighborhood of $4,900, a total of more than $9,400.

Mr. Parsons had been severely injured by the collision suffering a broken foot, a broken ankle, a fractured kneecap and a broken right leg above the knee, as well as a cerebral concussion and internal injuries which produced a hemorrhage, although the concussion and internal injuries do not appear to have had any permanent effects. He was pinned in the driver's seat with the steering wheel forcibly driven into his abdomen and remained there in such position for about one and one-half hours until he was finally extricated. Subsequently, he spent 151 days in the hospital during which period he often suffered extreme pain, re-

quiring the administering of opiates. There was evidence that he continued to suffer pain up to the time of the trial. The jury was certainly justified in granting plaintiff a reasonable sum for all the pain and suffering he went through.

There was testimony to the effect that at the time of the trial the standard pay for drivers working for plaintiff's employer on the route to which plaintiff had been permanently assigned was approximately $556 per month. Actuarial testimony showed that this figure when capitalized for the period between the time of the accident and the time when plaintiff would have reached sixty-five years of age, approximately twenty years, at a figure of four percent, amounted to a present value of more than $90,600. When the figures for loss of past earnings, about $4,500, and past medical expenses incurred, $4,900, are added to that figure we find a sum of over $100,000. When mental and physical pain and suffering, together with reasonably certain future pain, suffering and inconvenience and further medical expenses are also considered, we do not find that the trial court abused its discretion in denying defendants' motion for a new trial on the ground that the damages awarded to plaintiff were excessive, nor do we find that the damages were extravagant.

For the foregoing reasons we find no error here. The judgment is affirmed.

UDALL, WINDES, PHELPS and STRUCKMEYER, JJ., concur.