416 P.2d 202

**William Reid HINSON and Constance Marie Hinson, husband and wife, Appellants,**

**v.**

**PHOENIX PIE COMPANY, an Arizona corporation; and James Hancock and Jane Doe Hancock, husband and wife, and John Doe and Richard Roe, Appellees.**

**No. 2 CA–CIV 191.**

Court of Appeals of Arizona.
June 29, 1966.

Joseph H. Soble, Tucson, for appellants.

Spaid, Fish, Briney & Duffield, by Richard Briney, Tucson, for appellees.

KRUCKER, Chief Judge.

Appellant, William Reid Hinson, plaintiff below, was injured when the pie delivery truck he was driving left the road and overturned. · He filed suit to recover for the injuries sustained alleging that the appellees herein, defendants below, were negligent in providing him with an unsafe vehicle. Several days prior to trial the appellants moved for a continuance on grounds that the location of a missing witness, the highway patrolman who had investigated the accident, had been located and that additional time was required to interview this witness and properly prepare for trial. The motion was heard and denied on grounds that sufficient time existed prior to the trial to interview this witness. The issue went to trial and at the close of appellants' case, the trial court granted appellees' motion for directed verdict and judgment was entered thereon. A motion for a new trial was duly filed and denied. From denial of the motion for a continuance, from the directed verdict and judgment thereon, and from denial of the motion for new trial, this appeal is taken.

Appellee Phoenix Pie Company was the owner of the pie delivery truck driven by Hinson when injured. An agreement existed between this company and appellee Hancock for the distribution of pies in the Tucson area. The agreement provided that Phoenix Pie Company would provide Hancock with a delivery truck, that Hancock would undertake responsibility for the repair and maintenance of the vehicle, that required repairs would be paid for from funds collected in the sale of pies, that from such funds Hancock would keep approximately $125.00 per week for his services and would deposit the balance in an account for the company.

Appellant Hinson had contacted Hancock regarding employment as a pie deliveryman and after consulting Phoenix Pie Company, Mr. Hancock entered into an agreement with Mr. Hinson concerning the employment. Hinson was to make several trips to Phoenix each week to pick up pies, using the Phoenix Pie Company vehicle supplied Hancock and deliver them to Tucson. He was to be paid $10.00 per trip and was given $10.00 for gas and oil on each trip. In addition, Mr. Hinson was paid $30.00 per week for making certain pie deliveries in the Tucson area.

On May 1, 1961, Mr. Hinson was making one of his trips to Phoenix when the delivery truck went off the highway and overturned, seriously injuring him. A highway patrolman was dispatched to the accident and arrived at the scene approximately 20 to 30 minutes after the accident occurred. The patrolman found Mr. Hinson standing near the overturned truck in a state of shock and suffering severe bodily injuries. Mr. Hinson was taken to the Pinal County Hospital, where he remained unconscious for approximately three days. He was later released and thereafter admitted to the Veterans Hospital in Tucson where a damaged kidney was removed and psychiatric treatment undertaken.

At the trial Mr. Hinson was suffering from retrograde amnesia and was unable to recall any of the events which occurred on the date of the accident. The highway patrolman who had investigated the accident testified as to what he observed at the scene of the accident but was not permitted

to testify as to what, in his opinion, had caused the accident. He testified that he observed little twists of rubber marking the highway and that thereafter there were deep gouges in the highway running in the same direction that the truck apparently took in going off the road. This witness further indicated that the right rear tire had no tread and was blown out, that the right rear rim was worn and bent, that the other tires on the truck were all inflated and that there were no foreign objects in the tire or on the roadway prior to the black marks. He testified that during his employment with the Arizona Highway Patrol from 1956 through 1962, he had investigated a minimum of 300 automobile accidents, had taken special courses in traffic accident investigation and had personally taken part in many tire safety experimental tests. However, when asked on the basis of his observations and experience what caused the black marks and gouges to appear on the highway, the court sustained appellees' objection and the witness was not permitted to express an opinion as to the cause of the markings and the cause of the accident. Appellants assign this ruling as error, alleging that in prohibiting the highway patrolman from testifying as to the cause of the marks on the highway, the court erroneously eliminated proper evidence upon which the jury could determine the ultimate fact of causation.

Although the appellant did not make an offer of proof in accordance with Rule 43(h), Arizona Rules of Civil Procedure, 16 A.R.S., the voluminous transcript reveals that it was obvious to the court that testimony of the highway patrolman would have been that, in his opinion, the defective right rear tire was the cause of the accident. In accordance with the doctrine of our Supreme Court in Watson v. Southern Pacific Company, 62 Ariz. 29, 152 P.2d 665

(1944), we believe that the discussions of counsel, out of the jury's presence, on appellees' objections to the opinion testimony of the highway patrolman, was sufficient notice to the court to bring the matter within the requirements of Rule 43(h).

Appellees contend that the trial court must conduct a preliminary inquiry both as to the subject matter of the particular issue and as to the qualifications of the witness as an expert. As to the subject matter, appellees allege that the issue must be beyond the understanding of average laymen to permit expert witness opinion testimony and in this case the questions posed to the highway patrolman were not beyond the understanding of average laymen. Regarding qualifications of the witness as an expert, appellees assert that it is for the trial judge, in the proper exercise of his discretion, to determine whether a witness is competent to testify as an expert. Thus, it is contended that the nature of the questions regarding the cause of marks on the highway and the cause of the accident were issues for the jury and the court properly refused to permit the witness to usurp the function of the jury and to speculate and opine as to the ultimate facts in the case.

Although it is noted in Udall, Arizona Law of Evidence § 21 (1960), that the traditional rule prohibits an expert from giving an opinion on an ultimate fact to be decided by the jury, it is further recognized by Udall, supra, at page 35:[1]

"The modern trend, however, is against a strict exclusion of testimony solely because it amounts to an opinion upon an ultimate fact. An Arizona decision has suggested that courts often make no distinction between evidential and ultimate facts subject to expert opinion, since it is considered more important to get to the truth of the matter than to quibble over

1. In Allied Van Lines v. Parsons, 80 Ariz. 88, 93, 293 P.2d 430, 433 (1956), the Arizona Supreme Court stated " * * * this court has held previously that expert opinion will not be excluded merely because it deals with ultimate facts."

(Citing Watson v. Southern Pac. Co., 62 Ariz. 29, 152 P.2d 665 (1944).) Also see the excellent discussion of this issue in State v. Romo, 66 Ariz. 174, 185 P.2d 757 (1947).

distinctions which are in many instances impracticable. Accordingly, in many cases experts have been permitted to state facts known to them because of their expert knowledge, though the testimony involved one of the ultimate facts to be determined by the jury. This is especially applicable where the ultimate fact is one the jury cannot properly appreciate and evaluate without benefit of expert opinion."

One of the ultimate facts in this case was determination of what caused the accident. This determination, in turn, partially depended upon a determination of what caused certain black marks and gouges on the highway. We have previously noted that the highway patrolman was permitted to testify as to what he witnessed at the scene of the accident but was not permitted to express his opinion as to what caused the marks on the highway or caused the accident. The trial judge indicated several times that sufficient foundation had not been laid to link the marks and gouges on the highway with the accident and that there was no evidence showing that the marks and gouges were not on the highway prior to the accident or were not caused subsequent to the accident. Thus, without further foundation, the trial court would not permit this witness to render an opinion.

We believe that Udall, supra, at pages 37–38, indicates the difficulties with which trial judges are concerned in allowing such testimony.

"A properly qualified expert who did not witness the accident has been permitted to give his opinion as to the speed of an automobile based on skid marks, damage to the vehicles, injuries and other effects of a collision. But so many variables are involved in trying to reconstruct an accident that the court should carefully scrutinize the qualifications and the information of a non-eyewitness expert who undertakes to offer opinions beyond those involving speed, skidmarks and point of impact."

■ We are cognizant of the fact that where facts can be intelligently described

to jurors and understood by them and they can form reasonable opinions for themselves, the opinion of expert witnesses will be rejected. Alires v. Southern Pac. Co., 93 Ariz. 97, 378 P.2d 913 (1963); City of Phoenix v. Schroeder, 1 Ariz.App. 510, 405 P.2d 301 (1965). Furthermore, the question of the competency of an expert witness is a matter resting in the sound discretion of the trial court and its exercise will not be reviewed except for abuse. City of Phoenix v. Brown, 88 Ariz. 60, 352 P.2d 754 (1960); Gray v. Woods, 84 Ariz. 87, 324 P.2d 220 (1958); Allied Van Lines v. Parsons, 80 Ariz. 88, 293 P.2d 430 (1956); City of Phoenix v. Schroeder, supra. As noted in Allied Van Lines v. Parsons, supra, at 80 Ariz. 94, 293 P.2d at 433:

"As to the question of whether a proper foundation was laid for the admission of such evidence it suffices to say it is well-settled law in this jurisdiction that the question of whether an expert witness is competent is a matter that rests in the sound judicial discretion of the trial court." (Citing Gila Valley, Globe etc. Co. v. Lyon, 9 Ariz. 218, 80 P. 337 (1905); Arizona Superior Mining Co. v. Anderson, 33 Ariz. 64, 262 P. 489 (1927).)

■ In accordance with the foregoing, we believe that the record discloses that the highway patrolman might properly have been permitted to express an opinion as to the cause of the markings on the highway and cause of the accident. However, the issue is largely within the discretion of the trial judge who has the witness before him and we find no basis for concluding that the trial court abused its discretion in refusing to permit the highway patrolman to so testify.

Appellants next assign as error the trial court directing a verdict against them, asserting that in ruling on a motion for directed verdict, such motion may be granted only where there is, as a matter of law, no evidence or reasonable inference therefrom to support the view of the party opposing the motion. Appellants urge that by its action the trial court removed from the

jury a set of facts and inferences to be drawn therefrom upon which reasonable men could differ. The appellants quote the language of the trial judge in ruling on the motion, part of which is reproduced herein for the purpose of elucidating the problem concerning the trial judge.

"I mean, even, * * * if we assume for the moment that the agency relationship existed, the duty existed, the tire was defective, the tire was blown, we still don't know what caused, and I don't think it's necessarily true to stop right there and say that even if the tire was blown out, that that's what necessarily caused the truck to turn over.

\* \* \* \* \* \*

"I don't know if that necessarily ties it up to make it a circumstantial evidence case or not, and I believe that unless you come within the realm of circumstantial evidence here, that you don't have anything.

"So the question is, do you come close enough in order to reason it in by circumstantial evidence. That's the problem that is plaguing me."

■■■ It is well established that in determining the propriety of the action of the trial court in directing a verdict for the appellees, the appellate court must review the evidence in the light most favorable to the appellants and against the appellees. Robledo v. Kopp, 99 Ariz. 367, 409 P.2d 288 (1965); LeRoy v. Phillips, 97 Ariz. 263, 399 P.2d 669 (1965); Lantay v. McLean, 2 Ariz.App. 22, 406 P.2d 224 (1965). In addition, in determining whether under the law the verdict can be sustained, all evidence and inferences that can reasonably and justifiably be drawn therefrom are assumed to be true. Sturm v. Heim, 95 Ariz. 300, 389 P.2d 702 (1964); Clark v. Compania Ganadera de Cananea, S.A., 94 Ariz. 391, 385 P.2d 691 (1963). If the evidence is of such character that reasonable minds may differ on the inferences to be drawn from the facts, the case must be submitted to the jury. Clark v. Compania Ganadera de Cananea, S.A., supra; Figueroa v. Majors, 85 Ariz. 345, 338 P.2d 803 (1959); Swetnam v. F. W. Woolworth Company, 83 Ariz. 189, 318 P.2d 364 (1957).

Appellees, on the other hand, contend that the trial court properly directed a verdict against the appellants on grounds that a jury is not permitted to speculate as to a party's liability in a negligence case and that the appellants have failed to satisfy the three-element test of liability, i. e., a duty on the part of the defendant to the plaintiff, a failure to perform that duty, and an injury proximately resulting from such failure. We cannot agree with the latter contention since we believe that the record contains sufficient evidence for submission of these issues to the jury.[2] The trial court was apparently concerned with the belief that the appellants had failed to limit the number of inferences that could be drawn from the evidence presented and that any determination of the jury would be pure speculation.

2. The Restatement (Second), Torts §§ 392, 393 (1965), provides:
"One who supplies to another, directly or through a third person, a chattel to be used for the supplier's business purposes is subject to liability to those for whose use the chattel is supplied, or to those whom he should expect to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by persons for whose use the chattel is supplied.
(a) if the supplier fails to exercise reasonable care to make the chattel safe for the use for which it is supplied, or
(b) if he fails to exercise reasonable care to discover its dangerous condition or character, and to inform those whom he should expect to use it."
Section 393 provides:
"One who supplies through a third person a chattel to be used for the supplier's business purposes is subject to liability under the rules stated in §§ 391 and 392 although the dangerous character or condition of the chattel is discoverable by an inspection which the third person is under a duty to the person injured to make."

Our Supreme Court stated in Robledo v. Kopp, supra, at 99 Ariz. 370–371, 409 P.2d 288, 291:

"In order for a plaintiff to avoid a directed verdict and have his case submitted to the jury he must first satisfy the trial judge that he has a quantity of evidence fit to be considered by the jury so as to insure that a verdict in his favor will be founded upon a reasonable basis. (Citation) To avoid a directed verdict the proponent must submit evidence to establish a prima facie case. A prima facie case requires that there be evidence to justify, not necessarily compel, an inference of liability. It gets the case to the jury for determination."

In Bogard G. M. C. Co. v. Henley, 92 Ariz. 107, 112, 374 P.2d 660, 663 (1962), the Arizona Supreme Court stated:

"The bare possibility that an accident happened in the manner claimed by plaintiff is insufficient cause to submit the case for decision of the jury." (Citation)

We believe that there was sufficient evidence presented to bring the issue of causation beyond "the bare possibility" that the accident occurred in accordance with the appellants' allegations. There was evidence that the right rear tire had no tread, that it had blown out and that the other tires were inflated and had lost no air. The highway patrolman testified that there were black rubber spots on the highway and certain gouges following these black spots running in the same direction that the truck apparently took in going off the highway. He testified that these marks consisted of a series of black rubber spots on the highway commencing approximately 97 feet from the point the truck left the highway, that these marks were followed by several gouges in the pavement and that a deep, wide gouge was located where the truck left the highway approximately 66 feet from the area the truck came to rest. The patrolman further testified that the weather was clear and dry, that the road was straight and dry,

and that the driver's vision was not obscured on this stretch of highway. The jury might have concluded, and reasonably so, that since the right rear tire had no tread and was blown out while none of the other tires were deflated, the right rear tire sustained a blow-out causing the black rubber spots on the highway, and that the bent tire rim caused the gouges on the highway resulting in the vehicle going out of control and off the roadway.

■ Undoubtedly, there are numerous other possible causes of the accident that can be reasonably inferred from these facts. However, we believe that this state of the record indicates that of the numerous inferences that could be drawn, it is far more probable that the most reasonable inference to be drawn is that the cause of the accident was a blown out right rear tire, throwing the vehicle out of control and off the highway. In addition, this state of the record does not indicate to this Court that appellants' allegation as to the cause of the accident constitutes nothing more than a "bare possibility", or that it was an unreasonable basis upon which to predicate a verdict. The jury could reasonably conclude that a person of ordinary prudence in the exercise of ordinary care ought to have foreseen or reasonably anticipated that a tire without any tread, on a vehicle to be driven on the highway, might blow out and that as a natural and probable consequence thereof, the driver of the vehicle might lose control, go off the roadway and be injured thereby.

■ We previously noted that where reasonable minds may differ on the inferences to be drawn from the facts, the case must be submitted to the jury. We, therefore, hold that the trial court erred in granting appellees' motion for a directed verdict against the appellants.

Appellants' third assignment of error concerns the denial of their motion for a new trial. Since the judgment of the trial court must be reversed and the case remanded for

a new trial, we need not discuss the merits of this assignment of error.

The judgment of the trial court is reversed and the case remanded for a new trial.

HATHAWAY and MOLLOY, JJ., concur.