JOSEPH VESPE, PLAINTIFF-APPELLANT, v. CHARLES B. DiMARCO, DEFENDANT-RESPONDENT.

Argued October 19, 1964—Decided December 1, 1964.

432

Mr. *Sidney M. Schreiber* argued the cause for plaintiff-appellant (*Mr. Gerald W. Conway,* on the brief; *Messrs. Schreiber, Lancaster & Demos,* attorneys).

Mr. *Michael Patrick King* argued the cause for defendant-respondent (*Mr. Arthur Montano,* of counsel; *Messrs. Kisselman, Devine, Deighan & Montano,* attorneys).

The opinion of the court was delivered by

FRANCIS, J. In this case plaintiff sought to recover damages for personal injuries and monetary losses which he claimed were caused by defendant's negligence in the operation of his automobile. After trial the jury, by a vote of ten to two, returned a verdict for the defendant. The Appellate Division affirmed in an unreported opinion and we granted plaintiff's petition for certification. 42 *N. J.* 141 (1964).

The accident occurred on January 20, 1961 on the New Jersey Turnpike in Cherry Hill Township, Camden County, New Jersey. The Turnpike roadway proper is 48 feet wide at this point with four traffic lanes, two northbound and two southbound, separated by a ten foot median island. Each lane is 12 feet wide and, in addition, a ten foot shoulder borders each side of the roadway.

Snow had fallen for some time on the morning of January 20 until around noon. Duration of the fall was not given. It was sufficient, however, for the plows to be out and the road-

way had been cleared except for patches here and there along the surface. The snow had been pushed to the edge of the shoulder. The resulting piles there were about 12 inches deep. The mishap took place about 3:00 P. M. at which time it was clear and sunny. No one testified to the temperature. Because of the storm, the speed limit had been reduced to 35 miles per hour.

Prior to the accident in question a northbound tractor-trailer had jackknifed. It came to rest partly on the center island with its rear extending about half way across the left, or fast, northbound lane. The incident was reported to the police and two Authority maintenance trucks as well as State Troopers appeared on the scene. The trucks parked on the shoulder of the road facing north and some distance to the south of the position of the disabled vehicle. Both of them had rooftop amber flashing lights which were in operation.

A State Police patrol car drove to the scene and parked on the southbound right shoulder of the Turnpike about opposite the jackknifed tractor-trailer. The car carried a rooftop beacon light which was flashing red. The trooper, Ephriam Toy, alighted and proceeded to render assistance. He helped place flares on the roadway beginning at the center line of the northbound lanes about opposite the rear of the trailer and tapering in a southerly direction toward the median island for a distance of about 300 feet. Shortly thereafter, plaintiff Joseph Vespe, also a State Trooper, arrived in his patrol car. He had been proceeding in a northerly direction on the Turnpike. He drove 25 to 30 yards north of the trailer and parked his car on the right shoulder of the roadway. A third trooper, John Rosko, who had been northbound, pulled up and parked ahead of Vespe. Both men stepped out and went to the disabled vehicle to assist. After a few minutes, the situation being in hand, Vespe and Rosko decided to return to their cars. Vespe went across the roadway to the easterly edge of the right shoulder and began to walk north toward his vehicle. Rosko followed almost immediately thereafter but proceeded north on the center island.

At this time northbound traffic on the Turnpike was moving freely past the jackknifed tractor-trailer in the 12-foot right-hand lane. Defendant Charles B. DiMarco was driving north on the Turnpike. He was accompanied by an unnamed passenger who was not produced at the trial. There were three or four cars in front of him proceeding north, the nearest one being about 60 to 70 feet ahead. The road had snow patches in this area. He did not specify his rate of speed; in fact, no witness estimated it. Approaching the location of the disabled trailer, he observed the flares on the roadway when he was 20 to 30 feet from the first one. He noticed a trooper standing in the left lane near the trailer indicating to drivers that they should stay to the right. The cars in front of him veered slightly to the right and passed without difficulty. He moved about five feet to the right, apparently without any change in speed, and went into a skid. Precisely where this was with respect to the first flare was not specified.

Here it may be noted that at the pretrial conference, DiMarco's attorney said that as DiMarco proceeded he "applied his brakes causing his vehicle to go into a skid and strike the plaintiff who was standing in the middle of the roadway." That statement was incorporated in the pretrial order over the attorney's signature, and under our present practice was entitled to considerable probative force as an admission against defendant.

In any event, as his car spun around in the skid, DiMarco said he then applied his brakes. He testified also that as he skidded, he saw Vespe walking north on the right shoulder of the road (not standing in the middle of the roadway as the pretrial order stated). He did not say whether the brakes were applied before or after he saw Vespe. In skidding, the car made a complete turn, then "skidded completely to the right and started sliding to the right," and while doing so the right rear quarter panel struck Vespe, throwing him into a gulley or ditch to the right of the road.

Trooper Toy testified when he first saw the DiMarco vehicle it was skidding, "sliding broadside." It seemed to be heading toward Vespe whose back was to it as he walked toward his car. Toy called out a warning but the right rear of the car hit Vespe and he "went through the air" and landed in the ditch. As Rosko put it, he saw Vespe's body "hurtling through the air and it fell in the ditch." Examination showed a dent in the lower right rear side of DiMarco's car. By actual measurement, the distance from the point of impact to the ditch was 27 feet. After Vespe was struck, the car continued on in its skid for about 12 feet and stopped in the one-foot pile of snow on the edge of the shoulder of the road. The skid and sideways slide marks leading to the rear wheels measured 75 feet.

The facts of the accident as outlined above were substantially undisputed at the trial of Vespe's injury claim. After five hours of deliberation, the jury returned a verdict for the defendant. The trial court declined to vacate it as contrary to the weight of the evidence.

## I.

On this appeal plaintiff argues it was plain error for the trial court to exclude the doctrine of *res ipsa loquitur* from the jury's consideration. Defendant points out that there was no request to charge on the subject and no objection to the charge because of the court's failure to include it in instructing the jury on the issue of negligence. *R. R.* 4:52–1 imposes an obligation on counsel to object to portions of a charge which he considers erroneous. Where there is a failure to comply with the rule appellate tribunals are not disposed to review a challenged instruction. In rare cases, however, where the instruction qualifies as plain error under *R. R.* 1:5–3 (c), an exception is made. Such error exists when the language employed by the trial judge in guiding the deliberations of the jury constitutes legal impropriety affecting the substantial rights of the party affected of sufficiently grievous nature to

justify notice by the reviewing court and to convince the court that, of itself, the error possessed a clear capacity to bring about an unjust result. *State v. Corby*, 28 *N. J.* 106, 108 (1958). As will be seen, error of that dimension must be found here.

█ In our judgment the facts of the accident as detailed above warrant application of the doctrine of *res ipsa loquitur*. The circumstances attending the skidding of defendant's car —the distance of the skid, the striking of the plaintiff located as he was off the traveled portion of the Turnpike and at the farther edge of the shoulder and the severity of the impact— combine to bring into the case for the benefit of the plaintiff a permissible inference that the mishap occurred because of defendant's want of due care. The rationale was expressed by the court in *Murphy v. Kumler*, 344 *Ill. App.* 287, 100 *N. E. 2d* 660, 662 (*App. Ct.* 1951).

"The causes of one skidding an automobile on a wet or icy pavement are manifold, and are most often hidden within the breast and mind of the operator of the skidding car. On an icy pavement a momentary lapse of memory, a glance toward a passenger, or any other slight distraction, as well as speed or other improper handling might cause the skidding. It might even be a defect in the mechanical condition of the vehicle. Certainly it is not incumbent upon the plaintiff to show conclusively why the defendant was on the wrong side of the road or the exact cause of the skid. Only on rare instances would that knowledge be possessed by the plaintiff."

And, cf. *Bevilacqua v. Sutter*, 26 *N. J. Super.* 394 (*App. Div.* 1953); *Mackenzie v. Oakley*, 94 *N. J. L.* 66 (*Sup. Ct.* 1920); *Rogers v. Dubiel*, 373 *P. 2d* 295 (*Alaska Sup. Ct.* 1962); *Tomlinson v. Chapman*, 24 *Ill. App. 2d* 192, 164 *N. E. 2d* 240 (1960); *Ehrlich v. Merritt*, 96 *F. 2d* 251 (3 *Cir.* 1938).

██ This is not to say the jury would be compelled to infer that defendant was negligent in the operation of his car and so caused plaintiff's injury. But plaintiff was entitled to the advantage of the inference, the *prima facie* case it presented and the right not to have it affirmatively *excluded* from consideration by the jury. It is settled that even if a plaintiff pleads and proves some specific acts of negligence on the part

of a defendant, he is not deprived of the benefit of *res ipsa loquitur* where it applies. *Lorenc v. Chemirad Corp.,* 37 *N. J.* 56, 62 (1962); *Fedler v. Hygelund,* 106 *Cal. App. 2d* 480, 235 *P. 2d* 247, 251 (*D. C. App.* 1951). As Justice (now Chief Justice) Traynor said in *Rose v. Melody Lane of Wilshire,* 39 *Cal. 2d* 481, 247 *P. 2d* 335 (1952), even when plaintiff does not request the court to charge *res ipsa loquitur,* he is entitled to have the jury draw the inference as a matter of common knowledge and common sense. His comment was:

"Defendant contends that, since no instruction on res ipsa loquitur was requested by plaintiff or given by the trial court, it is now too late to rely upon that theory. The doctrine of res ipsa loquitur concerns a type of circumstantial evidence upon which plaintiff may rely to discharge his burden of proving defendant's negligence. Such evidence was given to the jury in this case. The nature of the accident and the fact that defendant and its agents were the only persons whose negligence could have been involved give rise to the inference that defendant was negligent. There is no reason why the jury may not draw that inference without, as well as with, a specific instruction authorizing them to do so." 247 *P. 2d,* at *p.* 339.

In the present case, as usual, the summations of counsel preceded the judge's charge. In that framework the defense attorney's summation must be regarded as a significant factor in our appraisal of the degree of error committed by the court. The language he used obviously prepared the minds of the jurors for ready acceptance of the error and served to emphasize it. He said:

"Before getting into the testimony on that [liability], let me say to you that the Court will charge you that negligence is never presumed. Negligence should be established by the preponderant weight of the believable evidence. The mere happening of an accident is not evidence, nor does it raise an inference of negligence. * * *"

At the conclusion of the summations, the trial judge delivered a standard, stereotyped negligence case charge to the jury. At the outset he told them it was his duty to instruct them "in the law that applies in this case" and that it was their duty to follow the law as he stated it to them. He ad-

vised them further that their authority was not an arbitrary power "but must be exercised with severe judgment and sound discretion in accordance with the rules of law stated" to them. Then he explained the nature of plaintiff's suit and described the accident in capsule form, *i. e.*, that the plaintiff while walking along the easterly edge of the shoulder of the road was struck by the skidding vehicle driven by the defendant. Following this he said:

"The defendant, Charles B. DiMarco, has testified to traveling in a northerly direction on the Turnpike on the date in question and as to going into a skid and turning some 360 degrees and then proceeding sideways on an angle off the road striking the plaintiff.

Both the parties therefore allege the contact between the vehicle of the defendant, Charles B. DiMarco, and the body of the plaintiff, Joseph Vespe, but the precise manner and the circumstances surrounding the collision are for you to determine."

Immediately thereafter he gave this specific declaration:

"Members of the jury, negligence is never presumed, it must be proved. The mere happening of a collision or the sustaining of injuries is not in and of itself evidence of negligence. * * *"

That statement, in the light of the proof in the case and defense counsel's summation, and because of its location in the charge after the reference to defendant's skidding, not only did not instruct the jury on the theory of *res ipsa loquitur,* it affirmatively excluded the relevant inference of negligence from their consideration. Thus having been advised they must follow the law as given by the court, they were now told they could not infer negligence from the fact that defendant's skidding car struck the faultless plaintiff. Such a positive deprivation of an important benefit to which plaintiff was entitled and on which his case depended in substantial measure, was not just error; it was more than that. It injuriously affected a substantial right of the plaintiff and possessed a clear capacity to bring about an unjust result. Therefore, it was plain error.

■■ We do not believe a trial judge discharges his burden fully when he fails to instruct the jury on the doctrine of *res ipsa loquitur* and its effect on the case when it is clearly applicable. In such cases he should advise the jury that from the evidence introduced by the plaintiff as to the manner in which the accident happened, they may infer causative negligence on the part of the defendant. The nature of the inference was discussed at some length in *Lorenc v. Chemirad Corp., supra* (37 *N. J.*, at *pp.* 70–71). If in the matter before us the court simply had discussed the facts, defined negligence without referring to *res ipsa loquitur,* and submitted the issue of negligence of the defendant to the jury, the situation on appeal would be different. In such case, in the absence of a request to charge, there might not be plain error. When, however, the charge not only defines negligence without reference to *res ipsa loquitur,* but also affirmatively denies plaintiff the benefit of the inference of negligence which the jury may draw, by excluding it from the case, grave disadvantage is visited on him. The burden of offering an explanation of the accident is lifted from the defendant thereby. Moreover, the gravity of the error was aggravated because the charge not only expressly deprived plaintiff of the right to rely upon the inference of negligence, but also advised the jury that an accident is "deemed unavoidable when ordinary care and diligence could not have prevented the happening of the thing which did happen." While the latter statement is a correct definition of unavoidable accident, in the context of the charge it accentuated the detrimental effect of eliminating *res ipsa loquitur* from the case.

A comparable legal situation appears in *Jensen v. Minard,* 44 *Cal. 2d* 325, 282 *P. 2d* 7 (1955). In that case defendant fired a rifle at a sparrow and killed a young girl whom he had seen alight from a bus and proceed down the roadway in the direction of her home. The trial court charged the jury "The mere fact that an accident happened, considered alone, does not support an inference that some party, or any party, to this action was negligent." A defendant's verdict was

reversed because of that statement. The Supreme Court of California said:

"Since it was conceded that the fatal bullet was fired by defendant, this instruction in effect told the jury that the fact that Bonnie was killed by a bullet from defendant's gun afforded no evidence of negligence. Ordinarily, however, accidents of this sort do not occur if those using firearms use due care. Even though instructions on the doctrine of res ipsa loquitur were not requested, the jury should not have been foreclosed from considering the evidence provided by the happening of the accident itself in determining whether defendant was negligent. * * * Moreover, this error was aggravated by the instruction given on unavoidable accidents, which stated: 'In law we recognize what is termed an unavoidable or inevitable accident. [Those] terms do not mean literally that it is not possible for such an accident to be avoided. They simply denote an accident that occurred without having been proximately caused by negligence. Even if such an accident could have been avoided by the exercise of exceptional foresight, skill or caution, still, no one may be held liable for injuries resulting from it.' Considering these instructions together, the jury could easily be led to believe that prima facie the accident was unavoidable and was not owing to defendant's negligence." 282 *P. 2d*, at *p.* 9.

## II.

Although inclusion of the instruction on unavoidable accident in the court's charge is not made a ground of appeal, we consider the occasion appropriate to discuss the matter.

In his answer defendant set forth unavoidable accident as a separate defense. In summation defense counsel argued, among other things, that defendant was not obliged to use extraordinary care, and that the accident was unavoidable.

As the Chief Justice pointed out in *Cohen v. Kaminetsky*, 36 *N. J.* 276, 284 (1961), unavoidable accident is not a separate defense within *R. R.* 4:8–3 because it is nothing more than a denial of negligence. And he said that to charge the single issue of negligence as if it were two separate and distinct ones has a potential for confusion. In order to avoid such difficulty, a number of courts have adopted the rule that in ordinary negligence cases the court's charge should not contain an instruction on unavoidable accident. For example, in recent times the California Supreme Court took that course.

In *Butigan v. Yellow Cab Co.*, 49 *Cal.* 2d 652, 320 *P.* 2d
500, 65 *A. L. R.* 2d 1 (1958), the court said:

· "We are of the view that the rule applied in Parker v. Womack,
37 Cal. 2d 116, 230 P. 2d 823, should be reconsidered. In reality, the
so-called defense of unavoidable accident has no legitimate place in
our pleading. It appears to be an obsolete remnant from a time when
damages for injuries to person or property directly caused by a
voluntary act of the defendant could be recovered in an action of
trespass and when strict liability would be imposed unless the defend-
ant proved that the injury was caused through 'inevitable accident.'
Although exactly what was covered by this expression is not clear, it
apparently included cases where the defendant was utterly without
fault. 'Unavoidable accident' was then an affirmative defense to be
pleaded and proved by the defendant. (See 2 Harper & James, The
Law of Torts (1956), 747 et seq.; Prosser on Torts (2d ed. 1955),
118.)

In the modern negligence action the plaintiff must prove that the
injury complained of was proximately caused by the defendant's negli-
gence, and the defendant under a general denial may show any circum-
stance which militates against his negligence or its causal effect. The
so-called defense of inevitable accident is nothing more than a denial
by the defendant of negligence, or a contention that his negligence, if
any, was not the proximate cause of the injury. * * * The statement
in the quoted instruction on 'unavoidable or inevitable accident' that
these terms 'simply denote an accident that occurred without having
been proximately caused by negligence' informs the jury that the
question of unavoidability or inevitability of an accident arises only
where the plaintiff fails to sustain his burden of proving that the
defendant's negligence caused the accident. Since the ordinary instruc-
tions on negligence and proximate cause sufficiently show that the
plaintiff must sustain his burden of proof on these issues in order to
recover, the instruction on unavoidable accident serves no useful
purpose.

It is particularly significant that no decision in this state, either
prior or subsequent to Parker v. Womack, 37 Cal. 2d 116, 230 P. 2d
823, has held that refusal to give the instruction was reversible error.
In several cases in which error had been claimed because of such a
refusal, it was held that the instruction was superfluous. The court,
in Stein v. United Railroads, 159 Cal. 368, 373, 113 P. 663, said that
it would seem absurd to burden the record with a formal statement
of the self-evident truth that, if the accident occurred without the
fault of either party, defendant would not be liable. Guay v. American
President Lines, 81 Cal. App. 2d 495, 513-514, 184 P. 2d 539, holds
that the refusal was not error because unavoidable accident is simply
another way of saying that defendant is not negligent and because
the jury was fully instructed on the general rules of liability for
negligence. Jaeger v. Chapman, 95 Cal. App. 2d 520, 523, 213 P. 2d
404, moreover, points out that the defendant is not entitled to have

his defense overemphasized and cannot complain that it is not stated in a particular way so long as it is adequately and fairly covered. In a number of decisions subsequent to Parker v. Womack, the refusal to give the instruction was upheld on the same grounds, although the opinions sometimes added that under the rule of that case it would not have been error to give the instruction. * * *

The instruction is not only unnecessary, but it is also confusing. When the jurors are told that 'in law we recognize what is termed an unavoidable or inevitable accident' they may get the impression that unavoidability is an issue to be decided and that, if proved, it constitutes a separate ground of nonliability of the defendant. Thus they may be misled as to the proper manner of determining liability, that is, solely on the basis of negligence and proximate causation. The rules concerning negligence and proximate causation which must be explained to the jury are in themselves complicated and difficult to understand. The further complication resulting from the unnecessary concept of unavoidability or inevitability and its problematic relation to negligence and proximate cause can lead only to misunderstanding." 320 *P. 2d*, at *pp.* 504–505.

See also, *Fenton v. Aleshire, Or.*, 393 *P. 2d* 217 (*Sup. Ct.* 1964).

▉ In our view, *Butigan v. Yellow Cab Co.* represents a sound solution of the problem. Accordingly, we hold that in the future a specific charge on unavoidable accident should not be given to the jury. In that way misunderstanding germinated by the notion that absence of negligence and unavoidable accident are different concepts and issues will be avoided.

For the reasons stated above with respect to the plain error in the trial court's charge, the judgment for the defendant is reversed and the cause is remanded for a new trial. Costs are to abide the event.

*For reversal and remandment*—Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, PROCTOR and SCHETTINO—5.

*Opposed*—Justices HALL and HANEMAN—2.