Gladys M. MAXWELL, Appellant,

v.

Kenneth OLSEN, d/b/a Sportsman's Lodge,
et al., Appellee.

No. 1150.

Supreme Court of Alaska.

April 15, 1970.

William H. Fuld and Robert M. Libbey, of Kay, Miller & Libbey, Anchorage, for appellant.

Daniel A. Moore, Jr., of Delaney, Wiles, Moore, Hayes & Reitman, Inc., Anchorage, for appellee.

Before DIMOND, RABINOWITZ, BONEY, and CONNOR, JJ., and BUTCHER, Superior Court Judge.

## OPINION

RABINOWITZ, Justice.

This appeal arises out of an accident which occurred on June 28, 1966, near the confluence of the Kenai and Russian Rivers. Appellant Gladys Maxwell alleged that at the time in question she was a passenger for hire aboard a ferry which was maintained and operated by appellee on the Kenai River which was "among the navigable waters of the United States of America." On the basis of these allegations, appellant further asserted the right to pursue her maritime remedies in the lower court.[1] Thus, under the "saving to suitors" clause of the Judiciary Act of 1789,[2] the case at bar was tried as a maritime tort before a superior court jury.

On the basis of extraordinarily divergent versions concerning the circumstances leading up to and surrounding appellant's accident, the jury returned a verdict in favor of appellee. Appellant then moved for a judg-ment n. o. v. and in the alternative for a new trial. These motions were denied and this appeal followed.

Appellant's first three specifications of error relate to the question of the sufficiency of the evidence.[3] This court, in reviewing denials of motions for judgments n. o. v., "views the evidence in its strongest light in favor of the party against whom the motions were made" to determine if fair-minded jurors could differ as to the reasonable inferences of fact that might be drawn from the evidence.[4] Concerning the granting or refusing of new trials, in Ahlstrom v. Cummings[5] we said that such decisions rest in the sound discretion of the trial judge and that:

> We shall not interfere with the exercise of his discretion except in the most exceptional circumstances and to prevent a miscarriage of justice.

The trial court's denial of a motion for new trial will be upheld where "there was clearly an evidentiary basis for the jury's decision" and we

> cannot say that evidence to support the verdict was completely lacking or was so slight and unconvincing as to make the verdict plainly unreasonable and unjust.[6]

Guided by these criteria, we hold that fair-minded jurors could have differed on the question of appellee's negligence. We further hold that such a jury could reason-

---

1. In her second amended complaint appellant alleged, in part, that she had
    a cause of action within the jurisdiction of the Maritime Law of the United States of America, as reserved to the Federal Judiciary under the Constitution of the United States of America, and under federal statute (28 U.S.C. § 1333), plaintiff has the right to pursue her maritime remedy in this court.

2. 1 Stat. 76–77 (1789) presently codified as 28 U.S.C. § 1333. This statute now reads as follows:
    The district courts shall have original jurisdiction, exclusive of the courts of the States, of:
    (1) Any civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled.

3. Appellant contends that the trial court erred in its refusal to grant her motion for judgment n. o. v., committed further error in denying her motion for a new trial and also asserts that the verdict "was contrary to the evidence and law of the case."

4. Otis Elevator Co. v. McLaney, 406 P. 2d 7, 9–10 (Alaska 1965).

5. 388 P.2d 261, 262 (Alaska 1964) (footnote omitted.)

6. Ahlstrom v. Cummings, 388 P.2d 261, 262 (Alaska 1964) (footnote omitted). *See also* City of Kotzebue v. Ipalook, Opinion No. 588, at 14 n. 13, 462 P.2d 75 (Alaska, December 5, 1969) ; West v. Adm'x of Estate of Nershak, 440 P.2d 119, 121 (Alaska 1968).

ably have concluded appellee did not breach any duty of care he owed to appellant. A state court under the "saving to suitors" clause of the Judicial Act of 1789, discussed below, must apply the doctrine of comparative, rather than contributory negligence.[7] In the case at bar, instructions on comparative negligence were given. Under the evidence, the jury could have concluded that appellee was not at all negligent. The evidence pertaining to almost every facet of the events which preceded appellant's attempt to disembark from appellee's ferry, as well as the method employed by appellant to disembark was in sharp conflict.[8] Resolution of such conflict was within the jury's province. Based upon our review of the record, we cannot conclude that evidence tending to support the jury's verdict was so slight and unconvincing as to require corrective intervention on our part. We therefore hold that the trial judge did not abuse his discretion in failing to grant a new trial on the asserted grounds of insufficiency of evidence. We further hold that the trial court was correct in its refusal to grant appellant's motion for judgment n. o. v.

■ In reaching these holdings, we have rejected appellant's arguments to the effect that the maritime aspects of this negligence suit require us to exercise a much broader scope of review than normally would be employed in non-maritime negligence actions. As we understand appellant's argument, this court should review the issue of liability de novo.[9]

7. 28 U.S.C. § 1333; G. Gilmore & C. Black, The Law of Admiralty 45 (1957); Chelentis v. Luckenbach S.S. Co., 247 U.S. 372, 38 S.Ct. 501, 62 L.Ed. 1171 (1918); Pope & Talbot, Inc. v. Hawn, 346 U.S. 406, 409, 74 S.Ct. 202, 98 L.Ed. 143, 150 (1953); Kermarec v. Campagnie Generale Transatlantique, 358 U.S. 625, 79 S.Ct. 406, 3 L.Ed.2d 550 (1959).

8. The accident occurred at the situs of appellee's small wilderness ferry boat operation which was located on the Kenai River downstream from the confluence of the Kenai and Russian Rivers. The primary purpose of this ferry was to convey fishermen from a campground located next to appellee's Sportsman's Lodge to the opposite shore for fishing. For $1.50 a passenger was entitled to ride back and forth as many times in one day as desired. On busy days as many as 350 to 400 people would use the services of the ferry. The ferry was located on government land, operated through a use permit issued by the Kenai National Moose Range, and inspected and licensed by the United States Coast Guard.

In regard to the issue of liability, five witnesses testified in appellant's behalf. Of this testimony, two witnesses' testimony came in by way of deposition. Three witnesses testified in appellee's behalf. Of the three witnesses, two were by deposition.

According to Ronnie Slay's version, he instructed the passengers, including appellant who was 50 years old and fairly heavy, during the crossing that they were to remain seated until he had stopped the ferry, and had come to the front of the boat to assist passengers off. Slay said that once they reached the other side he helped appellant off the boat and onto a three-foot dock, then as he was assisting her from the dock to the ground (a distance of approximately two feet) appellant lost her balance and fell.

Appellant and her witnesses controverted Slay's version in its entirety. According to appellant and her witnesses, no instructions were given, Slay did not offer any assistance, there was no dock or platform in existence when she attempted to disembark, and the only way to disbark was to jump down from a height of three and one-half to four feet onto the rocky, slippery river bed which was covered with about one inch of water at the time.

9. In regard to the scope of review in federal admiralty litigation, the Supreme Court of the United States in McAllister v. United States, 348 U.S. 19, 20, 75 S.Ct. 6, 8, 99 L.Ed. 20, 24 (1954), said:

In reviewing a judgment of a trial court sitting without a jury in admiralty, the Court of Appeals may not set aside the judgment below unless it is clearly erroneous. No greater scope of review is exercised by appellate tribunals in admiralty cases than they exercise under Rule 52(a) of the Federal Rules of Civil Procedure.

*McAllister* was followed by a 1966 amendment to the Federal Rules of Civil Procedure which made the Federal Rules of Civil Procedure applicable to all admiralty cases with the exception of prize

The case at bar was tried as a maritime tort. Appellant alleged that maritime law governed. Appellee did not dispute this contention, admitting that the Kenai River was "among the navigable waters of the United States of America." Article III, section 2 of the United States Constitution extends the "judicial power to all cases of admiralty and maritime jurisdiction." Congressional implementation of this constitutional provision followed. Section 9 of the Judiciary Act of 1789 provided that:

> [T]he district courts * * * shall also have exclusive original cognizance of all civil causes of admiralty and maritime jurisdiction * * * saving to suitors, in all cases, the right of a common law remedy, where the common law is competent to give it.[10]

■ Admiralty jurisdiction has traditionally encompassed tort causes of actions for personal injuries to passengers aboard ships on navigable waters.[11] Many of these suits are brought under the "saving to suitors" clause in order to obtain jury trials.[12] Generally, the "saving to suitors" clause means that a suitor asserting an *in personam* admiralty claim may elect to sue in a "common law" state court through an ordinary civil action.[13] In such suits, state courts are required to apply the same substantive law as would be applied had the suit been brought in admiralty in a federal court.[14]

■ In the case at bar, the parties differ on the question of what standard of appellate review is to be applied in maritime suits tried by juries in state courts under the "saving to suitors" clause. We are of the opinion that questions pertaining to scope of appellate review are procedural in character. In regard to procedural

---

cases. Lloyd v. Gill, 406 F.2d 585 (5th Cir. 1969), is typical of the employment of rule 52(a)'s clearly erroneous standard to a lower federal court's findings in admiralty.

In arguing for a broader type of admiralty review, appellant cites San Pedro Compania Armadoras, S. A. v. Yannacopoulos, 357 F.2d 737 (5th Cir. 1966). There the court said:

> [A]lthough we are bound by the clearly erroneous doctrine of McAllister v. United States * * * it does not apply with equal force, where, as here, the appellate court is in as good a position as the lower court to evaluate the testimony that is crucial to the case.

Appellant also relies on the following portion of the court's opinion in Caradelis v. Refineria Panama, S. A., 384 F.2d 589, 593–594 (5th Cir. 1967) (footnotes omitted):

> [T]his circuit as well as others has now fully accepted the proposition that the 'clearly erroneous' standard set out in Fed.R.Civ.P. 52 applies to admiralty actions. We have also consistently recognized that when some or all of the evidence upon which the findings are based was not testimony of 'live' witnesses produced before the district court, the 'clearly erroneous' standard is somewhat modified. * * *
> We feel that while we may not consider the evidence de novo and must give considerable weight to the findings of the district court, we may reexamine the evidence more closely than if the clearly erroneous rule was fully applicable * * *.

The *Yannacopoulos* and *Cardelis* cases are in accord with the decisions this court has made in construing our Civil Rule 52(a), which is identical with the federal rule. But such decisions are not pertinent here, because the "clearly erroneous" doctrine is applicable only in civil actions tried by the court without a jury. Paskavan v. Mesich, 455 P.2d 229, 240 (Alaska 1969); Fairbanks Publishing Co. v. Pitka, 445 P.2d 685, 687–688 (Alaska 1968).

10. 1 Stat. 76–77 (1789). For the present form of the "saving to suitors" clause, see *supra* note 2. *See also* Admiralty Jurisdiction Extension Act, 46 U.S.C. § 740.

11. The Admiral Peoples, 295 U.S. 649, 55 S.Ct. 885, 79 L.Ed. 1633 (1935). There the injured woman fell from the gangplank while disembarking. The Supreme Court held it was within admiralty jurisdiction on the ground that the gangplank was part of the vessel.

12. G. Gilmore & C. Black, The Law of Admiralty at 21–22 n. 77 (1957).

13. *Id.* at 33.

14. *Id.* at 45–46; see Stevens, Erie R.R. v. Tompkins and the Uniform General Maritime Law, 64 Harv.L.Rev. 246 (1950).

matters, state courts under the "saving to suitors" proviso are free to apply their own rules.[15] That is precisely what we have done in the case at bar in reviewing the merits of appellant's first three specifications of error. Under the "saving to suitors" clause, we are not precluded from applying our own established rules governing the scope of review of jury verdicts in civil actions.

■ Appellant next specifies as error the following damage instruction which was given by the court. In this charge, the jury was informed that they had been

> instructed on the subject of the measure of damages in this action because it is my duty to instruct you as to all the law that may become pertinent in your deliberations. I, of course, do not know whether you will need the instructions on damages, and the fact that they have been given to you must not be considered as intimating any view of my own on the issue of liability or as to which party is entitled to your verdict.

Appellant argues this instruction unduly emphasized that the jury should not reach issues of damages unless convinced of liability; that appellant's proposed instruction

was preferable;[16] and that the charge given was repetitious and amounted to an apology by the trial court for giving instructions on damages.[17] We find no merit in appellant's contentions. The questioned instruction contained a correct statement of law and was ·neither apologetic or repetitious.[18]

■ During the rebuttal portion of counsel for appellant's final argument, counsel for appellee stated:

> And I also object that he's already gone about 35 minutes. If I'd known he was going to take this long for rebuttal, I would have taken longer myself. I tried to hurry mine through so we could finish at 12:00.

The trial court then stated: "The objection is noted," and counsel for appellant resumed his final argument. We can discern no error on the trial judge's part in regard to this assertion of error, nor can we perceive that any serious prejudice to appellant's counsel's effectiveness resulted from this exchange.[19]

During his closing argument, counsel for appellant sought to persuade the jury that Ronnie Slay, who had not been present at the trial but whose deposition had been

---

15. In Madruga v. Superior Court, 346 U.S. 556, 561, 74 S.Ct. 298, 98 L.Ed. 290, 296 (1954), Mr. Justice Black said:
    Aside from its inability to provide a remedy in rem for a maritime cause of action, this Court has said that a state, 'having concurrent jurisdiction, is free to adopt such remedies, and to attach to them such incidents, as it sees fit' so long as it does not attempt to make changes in the 'substantive maritime law.' Red Cross Line v. Atlantic Fruit Co., 264 U.S. 109, 124, 44 S.Ct. 274, 68 L.Ed. 582, 587. * * *

16. Appellant submitted the following requested instruction:
    The Court has endeavored to give you instructions embodying all rules of law that may become necessary in guiding you to a just and lawful verdict. The applicability of some of these instructions will depend upon the conclusions you reach as to what the facts are. As to any such instruction, the fact that it has been given must not be taken

as indicating an opinion of the court that the instructions will be necessary or as to what the facts are. If an instruction applies only to a state of facts which you find does not exist, you will disregard the instruction.

17. In a previous instruction, the court told the jury:
    Neither by these instructions nor by any ruling or remark which I have made do I or have I meant to indicate any opinion as to the facts.

18. Orr v. Los Angeles Metropolitan Transit Authority, 213 Cal.App.2d 699, 29 Cal. Rptr. 355 (1963); Rasich v. Gladding McBean & Co., 90 Cal.App.2d 241, 202 P.2d 576 (1949).

19. Appellant's position here is that the exchange left "Appellant's counsel in a much less favorable light than Appellee's counsel at the conclusion of the case. The result was the serious impairment of the effectiveness of the argument urged on Appellant's behalf."

very detrimental to appellant's case, was not a credible witness. In the course of his final argument, the following took place:

MR. LIBBEY (appellant's counsel): And then he says, why shouldn't you just—just believe Slay. Well, I'll tell you one of the reasons is that he was a defendant in this case; still is. If he—if he could come back to Alaska, he could be served today and—and required himself to appear as a defendant in this action.

MR. MOORE (appellee's counsel): Your Honor, I object to that. Mr. Slay is not a defendant in this case.

THE COURT: I think the objection is well taken. It's my understanding Mr.—Mr. Slay is dead, isn't that correct?

MR. MOORE: That's correct.

MR. LIBBEY: As far as I know, but he's still a defendant.

THE COURT: And—

MR. MOORE: He's not a defendant in this action.

MR. LIBBEY: (Indiscernible-interrupted) against him.

THE COURT: Can't—can't bring him back to Alaska if he's dead, sir.

MR. LIBBEY: Well, I apologize to the Court, to Mr. Moore and to the jury, but that's—

MR. MOORE: He's not a defendant in this lawsuit and the Court so stated at the time that we initially started this case.

THE COURT: Now wait a minute. He was a defendant. He was never—

MR. MOORE: Yes.

THE COURT: —served and he's not here.

MR. MOORE: He was never a party to this lawsuit, let's put it that way, Your Honor. Under the—

THE COURT: He was—

MR. MOORE: —rules he was never a party to this lawsuit.

THE COURT: He—he was never served with papers.

MR. MOORE: That's correct, and—

THE COURT: Go ahead.

MR. MOORE: —so therefore, he was never a party.

THE COURT: Let's move on.

MR. LIBBEY: Thank you.

MR. MOORE: So I object to the statement of counsel on it.

THE COURT: Objection (Indiscernible-interrupted).

MR. MOORE: And I also object that he's already gone about 35 minutes. If I'd known he was going to take this long for rebuttal, I would have taken longer myself. I tried to hurry mine through so we could finish at 12:00.

THE COURT: The objection is noted.

MR. LIBBEY: All right. Ladies and Gentlemen, I'm sorry for the remark I made about him not being able to come back. I think there has been sufficient reason to question him without that remark—

■ Appellant argues that the jury "could very well have been shocked" by his counsel's attack on Slay's credibility once they learned that Slay was dead, thus preventing counsel from proceeding effectively along these lines. It is unclear what ultimate ruling the trial court made in regard to counsel for appellee's objection to this attempted attack upon Slay's credibility. Assuming that the trial court sustained appellee's objection, we cannot find that this ruling constituted prejudicial error. Concerning credibility, it was permissible for appellant's counsel to focus upon Slay's bias at the time his deposition was taken, regardless of whether Slay was dead at the time of trial or was technically a party or defendant. Nothing in the court's ruling precluded counsel for appellant from arguing the existence of bias at the time Slay's deposition was taken. We therefore

conclude that no prejudicial error resulted from the trial court's ruling.[20]

The trial court, over objection, gave the following instruction:

You are instructed, however, that merely because an accident occurred to plaintiff that this will not, of itself, make the defendant liable.

In the context of this case, appellant contends that the giving of this "mere accident" instruction confused and misled the jury. This specification of error presents the fourth occasion in which this court has been called upon to review the propriety of giving an unavoidable accident, or mere accident instruction. In three prior cases, Harrison v. Garner;[21] Mitchell v. Knight,[22] and Alaska Brick Company v. McCoy,[23] this court voiced its disapproval of the use of such instructions. In the first

of these cases, Harrison v. Garner,[24] we held it was reversible error to have given instructions on "mere accident" or "unavoidable accident."[25] In reaching this conclusion, we said:

The evidence was such that the jury could have found that defendant's own lack of care created or brought about the situation where the accident became inevitable or unavoidable. *In these circumstances the instructions on unavoidable accident were not warranted. It was reversible error to give those instructions because their probable effect was to confuse and mislead the jury to plaintiff's prejudice.*[26]

*Harrison* was followed by Mitchell v. Knight[27] where we again held that it was error to have given a mere accident instruction,[28] but further held such error harmless.[29] Alaska Brick Company v. Mc-

20. As we read the record, the jury had learned at a prior point during the trial that Slay was dead. In the presence of the jury, and just before Slay's deposition was read into evidence the record reflects the following colloquy:
MR. MOORE: [the deposition] Of Mr. Ronnie Slay.
THE COURT: It's understood that Ronnie Slay is now dead.
MR. MOORE: That's right, Your Honor, he—he was killed in the war here, some—
THE COURT: The deposition of Ronnie Slay may be read.

21. 379 P.2d 948, 949 (Alaska 1963).

22. 394 P.2d 892, 895–896 (Alaska 1964).

23. 400 P.2d 454, 455 (Alaska 1965).

24. 379 P.2d 948, 949 (Alaska 1963).

25. The instructions in *Harrison* read in part as follows:
The mere fact that an accident happened, considered alone, does not as a rule permit the jury to draw the inference that the accident was caused by someone's negligence. Also the mere fact, if it is a fact, that it was possible for a person to avoid an accident he did not avoid, does not, of itself, justify a finding that he was negligent.
*  *  *
*    *    *    *
The mere fact that an accident happened, considered alone, would not support a verdict for any particular sum.
379 P.2d at 949.

26. *Id.* at 949 (footnotes omitted) (emphasis added). Cited in support of the text is the Supreme Court of California's decision in Butigan v. Yellow Cab Co., 49 Cal.2d 652, 320 P.2d 500, 505–506 (1958). *Butigan's* disapproval of "unavoidable" or "inevitable" accident instructions has been followed in Vespe v. DiMarco, 43 N.J. 430, 204 A.2d 874, 881–882 (1964); Fenton v. Aleshire, 238 Or. 24, 393 P.2d 217, 223 (1964); Lewis v. Buckskin Joe's, Inc., 156 Colo. 46, 396 P.2d 933, 941–942 (1964).

27. 394 P.2d 892, 895–896 (Alaska 1964).

28. In the *Mitchell* case, the instruction in question read in part as follows:
The fact that an accident occurred and that the plaintiff sustained injuries therefrom, raises no presumption that the accident and the resulting injuries were caused by the negligence of the defendants, or any one of them. Accidents may and do occur in the absence of negligence.  *  *  *
394 P.2d at 895 n. 5.

29. In holding the giving of a mere accident instruction harmless error, we said in *Mitchell* that:
It was improper to give that instruction because the jury could have found from the evidence that lack of care on Knight's part brought about the situation where the collision between his car and appellant's motorbike became inevitable or unavoidable. However, every error committed in the course of

Coy [30] contains our most recent statement on the subject. There we held that the giving of a mere accident instruction was error,[31] but that the error was harmless because it did not appear that the jury was misled or confused to the prejudice of appellant. In *Alaska Brick*, in regard to mere accident or unavoidable accident instructions, we stated that in

> our experience and repeated consideration of authorities on this subject, we are unable to conceive of any situation in the typical negligence action where such an instruction would be appropriate. Such a situation might develop in the future; we do not foreclose that possibility. But as of this time we are convinced that in the ordinary negligence action an instruction on unavoidable accident is unnecessary and has a tendency to complicate the task that the jury has to perform. We express our disapproval of the continued use by the trial courts of such an instruction as a standard instruction in negligence actions.[32]

> > a trial does not call for reversal. Appellant does not point out in his brief, nor do we perceive in the light of all of the evidence in this case and the instructions as a whole, how [the] instruction * * * could have confused or misled the jury to appellant's prejudice. The error in giving [the] instruction * * * was harmless.
> > 394 P.2d at 896 (footnotes omitted).

**30.** 400 P.2d 454, 455–456 (Alaska 1965).

**31.** In the *Alaska Brick* case, the questioned instruction read in part:
> [T]he mere fact that an accident happened wherein the plaintiff was injured does not, in and of itself, entitle the plaintiff to a verdict against the defendant, nor serve as actual proof that

■ Despite our admonition to trial courts to eschew unavoidable accident or mere accident instructions, the trial court in the case at bar inexplicably gave the mere accident instruction which is now at issue in this appeal. We adhere to our previous conclusion that an instruction of this type should not be given because of its tendency to confuse and mislead juries in ordinary negligence actions. We therefore hold that the giving of a mere accident instruction in the case at bar was error. We further hold that on the facts of the case at bar this error constituted reversible error. Here the evidence was in stark conflict as to almost every aspect of the liability issue Given as close a question of liability as appears from study of this record, we conclude that the mere accident instruction prejudiced appellant's substantial right to a fair trial.

Reversed and remanded for a new trial.

NESBETT, C. J., not participating.

> the plaintiff was guilty of contributory negligence.
>
> \*     \*     \*     \*     \*
>
> The fact that an accident occurred and that the plaintiff sustained injuries therefrom, raises no presumption that the accident and the resulting injuries were caused by the negligence of the defendant. Accidents may and do occur in the absence of negligence and in order to fix liability upon the defendant, it is necessary for the plaintiff to prove by a preponderance of the evidence that the defendant was negligent and that such negligence was the proximate cause of plaintiff's injuries.
> 400 P.2d at 455 n. 2.

**32.** 400 P.2d at 456.